UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DANIEL RASKAS,<br><br>            Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON; MCNEIL-PPC, INC.,<br><br>            Defendants. | Case Number: 12-2174 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Dan H. Ball #27227MO
Christopher J. Schmidt #53362MO
BRYAN CAVE LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 (fax)

Stephen D. Brody (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
(202) 383-5300
(202) 383-5414 (fax)

*Attorneys for Defendants Johnson & Johnson and McNeil-PPC, Inc.*

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.    STANDARD OF REVIEW ................................................................................................. 2

III.    ARGUMENT ....................................................................................................................... 3

        A.    The Preponderance of the Evidence Establishes Federal Jurisdiction ................... 5

        B.    McNeil's Sales Data Do Not Contain "Gaps" Justifying Remand ......................... 8

        C.    The Court Should Reject Plaintiff's Arguments on Punitive Damages, Equitable Relief, and Attorney Fees ..................................................................... 11

              1.    Punitive Damages Must Be Considered for CAFA Jurisdiction ............. 11

              2.    Plaintiff's Demand for Equitable Relief Must Be Considered When Evaluating the Court's Jurisdiction ............................................................ 13

              3.    Plaintiff's Demand for Attorney Fees Contributes to the Amount-in-Controversy ....................................................................................... 14

IV.    CONCLUSION .................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Amoche v. Guarantee Trust Life Ins. Co.*,
  556 F.3d 41 (1st Cir. 2009)..................................................................................................8

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*,
  637 F.3d 827 (7th Cir. 2011) ..............................................................................................8

*Bass v. Carmax Auto Superstores, Inc.*,
  No. 07-0883, 2008 WL 441962 (W.D. Mo. Feb. 14, 2008) .....................................................12

*Bell v. Hershey Co.*,
  557 F.3d 953 (8th Cir. 2009) ......................................................................................... passim

*Brown v. City Chevrolet, LLC*,
  No. 09-0642, 2009 WL 3485833 (W.D. Mo. Oct. 28, 2009) ...........................................12, 14

*Capitol Indem. Corp. v. Miles*,
  978 F.2d 437 (8th Cir. 1992) .............................................................................................14

*Chapman v. Powermatic, Inc.*,
  969 F.2d 160, 163 (5th Cir. 1992) ......................................................................................9

*Chochorowski v. Home Depot USA*,
  585 F. Supp. 2d 1085 (E.D. Mo. 2008)....................................................................11, 12, 13

*Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC*,
  361 S.W.3d 364 (Mo. 2012) ..............................................................................................11

*Hargis v. Access Capital Funding, LLC*,
  674 F.3d 783 (8th Cir. 2012) ..............................................................................................2

*Hartis v. Chicago Title Ins. Co.*,
  694 F.3d 935 (8th Cir. 2012) .......................................................................................... passim

*Heretick v. Publix Super Markets, Inc.*,
  841 F. Supp. 2d 1247 (M.D. Fla. 2012)..........................................................................7, 12

*Hewitt v. Gerber Prods. Co.*,
  No. 2:12-cv-02152, 2012 WL 5410753 (W.D. Ark. Nov. 6, 2012) ......................................10

*In re Willis*,
  228 F.3d 896 (8th Cir. 2000) ..............................................................................................9

*Kates v. Chad Franklin Nat'l Auto Sales N. LLC*,
  No. 08-0384, 2008 WL 3065009 (W.D. Mo. July 30, 2008)..........................................4, 11

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Kerr v. Ace Cash Experts, Inc.*,
  No. 4:10-cv-1645, 2010 WL 5177977 (E.D. Mo. Dec. 14, 2010) ..........................................12

*Lewis v. Verizon Communications, Inc.*,
  627 F.3d 395 (9th Cir. 2010) ......................................................................................6, 7, 12

*Magee v. Advance Am. Servicing of Ark., Inc.*,
  No. 6:08-cv-6105, 2009 WL 890991 (W.D. Ark. Apr. 1, 2009) .............................................14

*Meridian Sec. Ins. Co. v. Sadowski*,
  441 F.3d 536 (7th Cir. 2006) ....................................................................................................8

*Nowak v. Innovative Aftermarket Sys., LP*,
  No. 4:06-cv-01622, 2007 WL 2454118 (E.D. Mo. Aug. 23, 2007) ........................................10

*Rolwing v. Nestle Holdings, Inc.*,
  666 F.3d 1069 (8th Cir. 2012) ..................................................................................................3

*Smith v. Am. States Preferred Ins. Co.*,
  249 F.3d 812 (8th Cir. 2001) ..................................................................................................13

*Thatcher v. Hanover Ins. Grp., Inc.*,
  No. 10-4172, 2012 WL 1933079 (W.D. Ark. May 29, 2012) .................................................10

*Thomas v. S. Pioneer Life Ins. Co.*,
  No. 3:09-cv-00120, 2009 WL 4894695 (E.D. Ark. Dec. 11, 2009) ........................................10

*Westerfeld v. Indep. Processing, LLC*,
  621 F.3d 819 (8th Cir. 2010) ................................................................................................2, 3

*Zellner-Dion v. Wilmington Fin., Inc.*,
  No. 10-cv-2587, 2012 WL 2952251 (D. Minn. July 19, 2012) ..............................................14

**STATUTES**

28 U.S.C. § 1332(d) ........................................................................................................................2

Mo. Rev. Stat. § 510.265.1 .......................................................................................................2, 11

**OTHER AUTHORITIES**

S. Rep. No. 109-14 (2005) ..............................................................................................................2

# I.
# **INTRODUCTION**

Although plaintiff Daniel Raskas avoids making a specific damages demand in his Complaint, the amount at issue in this case is not hard to determine. In the five years preceding this putative class action, which alleges that Johnson & Johnson and McNeil-PPC, Inc., deceived Missouri consumers into discarding Tylenol Cold Multi-Symptom solid medications upon their expiration date, McNeil sold $3.4 million of the product in Missouri. In addition to plaintiff's theory of actual damages, his suit demands punitive damages—an amount that under Missouri law can be up to five times the actual damages awarded—as well as equitable relief and attorney fees. Given these sums, it cannot reasonably be disputed that the amount-in-controversy might exceed $5 million, the threshold that must be satisfied for this Court's jurisdiction. Indeed, it would be hard to imagine what mathematical technique would have to be employed to conclude that the potential value of plaintiff's Complaint *might not* exceed that amount.

Nevertheless, plaintiff asks the Court to remand his case to state court on the ground that his Complaint does not specify the amount of actual damages at issue, and thus, cannot satisfy the jurisdictional threshold on the record before the Court. Even if plaintiff were not attempting to gain advantage from an omission of his own making, he misstates the legal standard in this circuit for removal. To satisfy the $5 million amount-in-controversy requirement, the removing party need only establish that the amount is supported by a preponderance of the evidence. Defendants here are not required to calculate with specificity the actual value of plaintiff's claims—which would be tantamount to proving plaintiff's case for him—or make definitive prognostications about other amounts, such as attorney fees, that at the outset of litigation are unknowable with precision.

Under the preponderance of the evidence standard applicable to removal, "the jurisdictional fact is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012) (citing *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009)).  That standard is met here: the record establishes $3.4 million in product sales during the five-year period before the Complaint was filed; Missouri law allows a plaintiff to collect punitive damages of up to five times the amount of actual damages awarded, *see* Mo. Rev. Stat. § 510.265.1; and plaintiff seeks equitable relief and attorney fees in addition to actual and punitive damages.  On this record, the Court "might legally conclude" that the amount-in-controversy exceeds $5 million, *Hartis*, 694 F.3d at 944, and even plaintiff is forced to concede that "the court might find that, given the large amounts of money Defendants have presented, it is reasonably probable that more than $5 million is in controversy."  (Motion to Remand ("Mot.") at 14 (ECF No. 15).)

His motion for remand should be denied.

## II.
## STANDARD OF REVIEW

Congress enacted the Class Action Fairness Act ("CAFA") to expand federal jurisdiction over class actions involving issues of national importance that affect interstate commerce.  *See Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010).  Under CAFA, the party seeking removal to federal court bears the burden of establishing that there is minimal diversity between the parties, there are at least 100 members in the class, and the amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d).  When evaluating these factors, "the court should err in favor of exercising jurisdiction over the case."  *See* S. Rep. No. 109-14, at 42 (2005); *see also Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012)

2

("CAFA 'should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" (citing *Westerfeld*, 621 F.3d at 822)).

To satisfy the $5 million amount-in-controversy requirement, the removing party need only establish that the amount is supported by a preponderance of the evidence. *Hartis*, 694 F.3d at 944 (citing *Bell*, 557 F.3d at 958). Under this standard, "[t]he jurisdictional fact is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Id.* (internal quotation marks omitted) (citing *Bell*, 557 F.3d at 959). Importantly, "[t]he removing party's 'burden of describing how the controversy exceeds $5 million' constitutes 'a pleading requirement, not a demand for proof. Discovery and trial come later.'" *Id.* at 944-45 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

Once the removing party has met this initial burden, "remand is only appropriate if [the party seeking remand] can establish that it is *legally impossible* to recover in excess of the jurisdictional minimum." *Bell*, 557 F.3d at 959 (emphasis added); *see Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1071 (8th Cir. 2012) ("[F]or a remand to be justified, [the plaintiff] must show that it is legally certain that recovery in this case cannot exceed $5 million.").

### III.
### ARGUMENT

Plaintiff does not dispute the existence of the required diversity of citizenship, nor does he seriously contend that the putative class has fewer than 100 members. He does not even make an effort to establish legal impossibility for the amount-in-controversy, conceding instead that "it is reasonably probable" that the Court will find the record sufficient to satisfy the $5 million threshold. Instead, plaintiff urges the Court to remand the case based on a strict standard of

3

review that runs counter to the law of this circuit.  In particular, while he acknowledges the preponderance of the evidence standard, plaintiff asserts that the Court should resolve in his favor any "doubts about whether defendants have *proved* that the class" meets jurisdictional requirements (Mot. at 9 (emphasis added)), thereby seeking application of a "legal certainty lens" specifically rejected by the Eighth Circuit in *Bell*.  *See Bell*, 557 F.3d at 959 ("The fact that the manufacturers might not be able to satisfy the demanding legal certainty standard does not indicate that they could not satisfy the more lenient preponderance of the evidence standard.").

Courts in this circuit have applied the preponderance of the evidence standard in a manner directly contrary to the approach urged by plaintiff here.  In *Hartis*, for instance, the Eighth Circuit affirmed the district court's denial of the plaintiff's motion to remand because the removing party, which was alleged to have illegally retained excess recording fees collected at real estate closings, did not need not to provide "extensive evidence of specific overcharges sufficient to prove up the $5 million threshold."  *Hartis*, 694 F.3d at 941.  Instead, the defendant was able to satisfy its burden by relying "on the number of transactions in which an overcharge could have occurred," which, in that case, were provided by affidavit.  *Id.*; *see also Kates v. Chad Franklin Nat'l Auto Sales N. LLC*, No. 08-0384, 2008 WL 3065009, at *2 & n.5 (W.D. Mo. July 30, 2008) (denying remand where the plaintiff claimed fraud and the defendant's affidavit showed only the number of instances of potential fraud).  In other words, to establish the amount-in-controversy, the removing party was not required to provide the exact data that would be needed to calculate the plaintiff's claims; rather, at the pre-discovery stage, it needed only to present enough evidence that the court "might legally conclude" that the jurisdictional minimum was satisfied.

4

Similarly, the preponderance of the evidence standard does not demand that defendants here calculate the actual value of plaintiff's claims with pinpoint accuracy. On the record before the Court, defendants have shown that plaintiff's claims, which include actual and punitive damages, equitable relief, and attorney fees, "might legally" cross the $5 million threshold for federal jurisdiction.

## A.      The Preponderance of the Evidence Establishes Federal Jurisdiction

McNeil provided available data on sales of Tylenol Cold Multi-Symptom solid medications in Missouri and demonstrated why the amount of product sold, when considered with plaintiff's claims, supports the conclusion that jurisdictional requirements are satisfied. Specifically, through the Affidavit of Finance Director Kirk Barton, McNeil established that over the past five years, it shipped 593,104 packages of Tylenol solid cold medications treating multiple symptoms to direct purchasers in Missouri at a wholesale cost of $2,555,096. (Affidavit of Kirk Barton ("Barton Aff.") ¶ 5 (ECF No. 1-2).) As the Barton Affidavit makes clear, this is the best information about Missouri sales maintained by McNeil. (*Id.*) The 593,104 packages[1] represent the number of purchases which are potentially subject to plaintiff's damages theory, which he describes in the Complaint as losses incurred "by virtue of having discarded the subject medications after their 'expiration dates' and spending money to replace them." (Compl. ¶ 89 (ECF No. 1-1); *see also id.* ¶ 99); *Hartis*, 694 F.3d at 941 (appropriate at removal stage to evaluate jurisdiction based on "number of transactions in which an overcharge could have occurred"). The retail cost of the 593,104 packages at issue was approximately $3,469,310. (Barton Aff. ¶ 5.)

---

[1] The volume of packages is such that plaintiff does not seriously dispute that the putative class consists of more than 100 members.

5

Plaintiff argues that the preponderance of the evidence does not meet defendants' burden of establishing that the claims here might legally exceed $5 million because of alleged "'gaps' in the evidence that prevent the court from determining [whether $5 million is in controversy]." (Mot. at 9.)  In doing so, plaintiff attempts to capitalize on a condition of his own making: the absence of a specific damages demand in his Complaint.  But courts have routinely found federal jurisdiction over indeterminate complaints, even where, as here, a plaintiff declines to illuminate his damages theory when seeking remand.  For example, in *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395 (9th Cir. 2010), the plaintiff alleged that some customers had been billed for services they never ordered, although her complaint did not specify an exact amount of damages. *Id.* at 399.  To demonstrate the amount-in-controversy, the defendant proffered an affidavit that evinced the total amount billed for the category of services targeted by the complaint.  *Id.*  The plaintiff provided no contrary evidence, but argued that the defendant's affidavit was over-inclusive because some of the amounts billed were authorized and thus outside the scope of her claim.  *Id.* at 399-400.  The Ninth Circuit rejected the plaintiff's effort to find gaps in the defendant's evidence and vacated the district court's remand order, explaining: "on this record, the entire amount of the billings is 'in controversy.'  The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.'" *Id.* at 400.  Similarly, plaintiff here complains that the total sales of Tylenol Cold Multi-Symptom solid medications in Missouri is over-inclusive because some purchasers may not have discarded and replaced medication after it reached its expiration date.  (*See* Mot. at 7.)  But whether a particular purchase was a post-expiration replacement is precisely what is "in controversy" in this case, much like whether a particular charge was "unauthorized" in *Lewis*.

6

Thus, as the *Lewis* court concluded, the consideration of total sales of a product at issue can—and does—meet the preponderance of the evidence standard for federal jurisdiction.

Likewise, in *Heretick v. Publix Super Markets, Inc.*, 841 F. Supp. 2d 1247 (M.D. Fla. 2012), the plaintiff alleged that customers were illegally charged a transaction fee without notice when using the defendant's ATMs, but his complaint failed to state a specific amount of damages. The defendant provided a declaration containing the total number and value of transaction fees collected over the relevant period, *id.* at 1249, and the plaintiff did not submit any contrary evidence of his own, *id.* at 1250. The plaintiff argued that the defendant's evidence was over-inclusive, because not all transaction fees were charged without notice, but the court rejected the argument. The defendant established a basis for removal by demonstrating that there were "sufficient *potential* plaintiffs who seek sufficient money to satisfy CAFA." *Id.* (emphasis added).

Accordingly, plaintiff in this case cannot avoid federal jurisdiction by imposing on defendants the burden of proving the amount of his claim with precision. At this stage, it is not defendants' burden to prove the exact number of consumers "who discarded and replaced some of the product after the expiration date" (Mot. at 10), or determine the precise "value of medication discarded after the expiration date." (*Id.*) Rather, defendants must demonstrate only that a factfinder might legally conclude that plaintiff's claims exceed the $5 million jurisdictional threshold. Here, the record shows that plaintiff's actual damages implicate as many as 593,104 packages of the subject medications at a retail cost of $3,469,310, and when punitive damages, equitable relief and attorney fees are added, plaintiff concedes that "the court might find that, given the large amounts of money Defendants have presented, it is reasonably probable that more than $5 million is in controversy." (*Id.* at 14.)

7

Yet plaintiff rests his remand motion on the idea that while it is reasonably probable that more than $5 million is in controversy, the evidence somehow fails to satisfy the standard of showing that a fact finder might legally conclude the same thing. Plaintiff's effort to draw a distinction between "reasonably probable" and the "might legally conclude" phrasing used by the Eighth Circuit under the preponderance of the evidence standard fails as a matter of law. The Seventh Circuit itself, which is often cited for the "reasonable probability" standard, has explained that no special meaning should be ascribed to that phrase vis-à-vis the preponderance of the evidence standard. *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829-30 (7th Cir. 2011); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). The First Circuit likewise concluded that the two standards are identical. *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 50 (1st Cir. 2009) ("[T]he reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard adopted by several circuits.").

**B.      McNeil's Sales Data Do Not Contain "Gaps" Justifying Remand**

Plaintiff separately complains that the Barton Affidavit "leave[s] gaps in determining the number of class members and the amount in controversy." (Mot. at 6.) But plaintiff misconstrues the evidence required to establish jurisdiction under CAFA. Defendants' burden here is a preponderance of the evidence, "not a demand for proof." *Hartis*, 694 F.3d at 944-45; *see Bell*, 557 F.3d at 959 (rejecting the requirement of "legal certainty"). The *only* evidence of sales volumes before the Court—not simply a mere preponderance—is found in the Barton Affidavit. As Mr. Barton's Affidavit makes clear, McNeil "does not maintain data tracking product sales to consumers on the state level, but does maintain data on sales to its direct purchasers." (Barton Aff. ¶ 5.) That data "provides the best data maintained by McNeil for the

8

total retail sales of its products on a state-by-state level." (Supplemental Affidavit of Kirk Barton ("Suppl. Barton Aff.") ¶ 5 (attached as Ex. A)); *see also In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)) (defendant is not required to conduct an investigation to obtain additional information at the removal stage, but can instead rely—as defendants do here—on the information available at the time of removal).

While plaintiff suggests that "direct purchasers" in Missouri may have "re-sold the products" outside of the state (Mot. at 7), he offers no evidence of this proposition, nor does he account for the possibility that wholesalers in other states shipped product to retailers in Missouri, a conclusion supported by sales data obtained by McNeil from SymphonyIRI. SymphonyIRI provides information and analytics for consumer packaged goods, retail, and healthcare companies and collects data on retail product sales, including sales of Tylenol Cold Multi-Symptom medications. (Suppl. Barton Aff. ¶ 8.) Its data shows retail sales of Tylenol Cold Multi-Symptom solid medications in Missouri were 10% *higher* than McNeil's sales to direct purchasers in the state. (*Id*. ¶ 9.)

While plaintiff cites the possibility that a citizen from a state other than Missouri purchased Tylenol Cold Multi-Symptom solid medications here (Mot. at 7), he points to no evidence that would establish any such sales, let alone their magnitude. And while plaintiff attempts to fault McNeil for providing data for sales of Tylenol cold medications treating multiple symptoms, including various Tylenol products that he found on assorted web pages, he has no basis for his assertion that the data "contains at least four separate products besides Tylenol Cold Multi-Symptom." (Mot. at 6.) As an initial matter, plaintiff's Complaint would not justify the restriction he advocates in his motion, as the Complaint refers to Tylenol Cold

9

Multi-Symptom "medications" (*see, e.g.*, Compl. ¶ 1 (the "subject medications"), Prayer for Relief ¶ 3 (seeking relief applicable to "subject products")) and broadly targets alleged representations concerning "Tylenol cold, allergy and sinus products," (Compl. ¶ 51.); *see Bell*, 557 F.3d at 958; *Thatcher v. Hanover Ins. Grp., Inc.*, No. 10-4172, 2012 WL 1933079, at *11 (W.D. Ark. May 29, 2012) ("While [a] plaintiff and his attorneys had the right to draw his complaint as he saw fit (as the master of his complaint), he and they are obliged to live with it as drawn and to pursue it—if they can—in a court having proper jurisdiction over it as drawn."). In any event, plaintiff's speculation that data presented by McNeil through the Barton Affidavit "contains at least four [additional] products" is simply wrong. (*See* Suppl. Barton Aff. ¶ 6.) Mr. Barton's supplemental affidavit makes clear that the data includes only the two products McNeil believed to be covered by the allegations in plaintiff's Complaint: Tylenol Cold Multi-Symptom and Tylenol Cold Head Congestion solid medications. Just as importantly, even after removing Tylenol Cold Head Congestion medications, sales of Tylenol Cold Multi-Symptom solid medications to direct purchasers in Missouri during the past five years include 571,624 packages at a retail cost of $3,336,977. (*Id.* ¶ 7.)

None of the supposed "gaps" plaintiff identifies in his motion create the kind of evidentiary shortcoming that courts have found sufficient to justify remand, such as where a removing party did not proffer any facts to permit an analysis of the amount-in-controversy, *see, e.g.*, *Hewitt v. Gerber Prods. Co.*, No. 2:12-cv-02152, 2012 WL 5410753, at *8 (W.D. Ark. Nov. 6, 2012) (defendant "provide[d] no underlying factual basis" ); *Nowak v. Innovative Aftermarket Sys., LP*, No. 4:06-cv-01622, 2007 WL 2454118 (E.D. Mo. Aug. 23, 2007) (criticizing the defendant's declaration for lacking a "'good faith estimate' of the financial impact relating to GAP waiver contracts currently in force")), or where the removing party could have provided

10

more precise data at the pre-discovery phase, *see, e.g.*, *Thomas v. S. Pioneer Life Ins. Co.*, No. 3:09-cv-00120, 2009 WL 4894695, at *2 (E.D. Ark. Dec. 11, 2009) (observing that the defendant did not adduce specific evidence that it reasonably should have had regarding potential damages); *Chochorowski v. Home Depot USA*, 585 F. Supp. 2d 1085, 1093 (E.D. Mo. 2008) ("Although [the defendant] had the opportunity to provide the Court with actual revenue figures based on its sale of Damage Waivers, it did not do so."). In this case, defendants provided the best data they maintain—and the only record data—regarding the potential number of purchases at issue in this case. That data, when considered with plaintiff's demand for punitive damages, equitable relief and attorney fees, establishes this Court's jurisdiction by a preponderance of the evidence. *See Hartis*, 694 F.3d at 941; *Kates*, 2008 WL 3065009, at *2 & n.5.

C. **The Court Should Reject Plaintiff's Arguments on Punitive Damages, Equitable Relief, and Attorney Fees**

    1. **Punitive Damages Must Be Considered for CAFA Jurisdiction**

Even if a fact finder were able to conclude legally that actual damages are less than the full $3.4 million in sales potentially at issue, plaintiff's punitive damages claim would easily push the amount-in-controversy over $5 million. Under Missouri law, a plaintiff can recover punitive damages in an amount up to five times an award of actual damages. Mo. Rev. Stat. § 510.265.1; *Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC*, 361 S.W.3d 364, 374-77 (Mo. 2012). Plaintiff argues that the Court should nevertheless remand his claims to state court because "actual damages have not been established" and it is therefore impossible to "determine whether the combination of compensatory and punitive damages and attorneys' fees will satisfy CAFA's $5 million jurisdictional threshold." (Mot. at 13-14 (quoting *Chochorowski*, 585 F. Supp. 2d at 1094).) Here again, plaintiff's argument is contrary to Eighth Circuit law, which does not require that actual damages be "established" to a legal certainty. *See Hartis*, 694

11

F.3d at 944.  Rather, the standard requires only that defendants show by a preponderance of the evidence that the Court "might legally conclude" that the combination of actual and punitive damages exceeds $5 million.  *Id.*

Because punitive damages can equal up to five times actual damages under Missouri law, the $5 million amount-in-controversy requirement could be satisfied here with actual damages of as little as $833,334, far below the $3.4 million in potential damages identified by defendants, even before considering the value of equitable relief and attorney fees.  *See, e.g.*, *Kerr v. Ace Cash Experts, Inc.*, No. 4:10-cv-1645, 2010 WL 5177977, at *2 (E.D. Mo. Dec. 14, 2010) (compensatory damages of $594,000 satisfies the amount-in-controversy requirement of CAFA "because of the potential for punitive damages and attorneys fees"); *Brown v. City Chevrolet, LLC*, No. 09-0642, 2009 WL 3485833, at *1 (W.D. Mo. Oct. 28, 2009) (damages of $1,004,099 satisfied amount in controversy); *Bass v. Carmax Auto Superstores, Inc.*, No. 07-0883, 2008 WL 441962, at *2 (W.D. Mo. Feb. 14, 2008) (damages of $658,431 satisfied amount in controversy). *Chochorowski*, cited by plaintiff, does not support a different conclusion.  There, the court refused to apply a punitive damages multiplier because, unlike the defendants in *Lewis* and *Heretick*, the *Chochorowski* defendant included in its estimate of actual damages persons specifically excluded from the class definition.  585 F. Supp. 2d at 1093.  In particular, the complaint sought only to recover damage waiver charges paid during a period of time before defendant Home Depot amended an equipment rental agreement, but Home Depot included charges imposed after the amendment.  *Id.*  In this case, plaintiff's complaint contains no such limitation and he has identified no means to exclude any purchaser from the scope of the putative class.  Unlike the *Chochorowski* court, therefore, this Court can determine that the combination

12

of potential compensatory and punitive damages satisfies CAFA's $5 million jurisdictional threshold.

2. **Plaintiff's Demand for Equitable Relief Must Be Considered When Evaluating the Court's Jurisdiction**

Plaintiff seeks equitable relief in the form of "an order to take all steps necessary to accurately disclose the meaning of the 'expiration dates' printed on the packages of the subject products; to provide accurate information as to when the subject medications are no longer stable, safe, and effective; to tell consumers how to store their medications to extend the medications' useful lives; and to provide all applicable financial relief naturally flowing from Defendants' obligations under this injunction." (Compl., Prayer for Relief ¶ 3.) The value of this equitable relief to the putative class further adds to the amount-in-controversy. *See Chochorowski*, 585 F. Supp. 2d at 1095; *Smith v. Am. States Preferred Ins. Co.*, 249 F.3d 812, 813-14 (8th Cir. 2001).

Plaintiff fails to grapple with the need to account for the value of the equitable relief he seeks, instead cursorily averring that the Court should not consider it because defendants "have not accurately valued the claim for actual damages." (Mot. at 14.) In doing so, plaintiff makes the same mistake he makes when addressing actual and punitive damages: he argues that defendants are required to present exacting proof of the precise amounts implicated by his damages theory. He thus fails even to address that, as pleaded, the equitable relief purports to provide information to class members that will prevent them from suffering the kind of damage they have suffered in the past, and will do so in perpetuity, and in theory provides at least as much value as the potential actual damages (and likely more, given the open-ended timeframe in which the supposed benefit to equitable relief would inure to plaintiff). To ignore the value of this demand entirely on the ground that defendants have not valued it precisely would allow a

13

plaintiff to avoid federal jurisdiction for claims clearly contemplated to fall within CAFA's scope.

    3.    **Plaintiff's Demand for Attorney Fees Contributes to the Amount-in-Controversy**

Courts in this circuit have repeatedly held that where, as here, attorney fees are sought (Compl., Prayer for Relief ¶ 6), such fees should be included in the determination of the amount-in-controversy for removal purposes. *See, e.g.*, *Zellner-Dion v. Wilmington Fin., Inc.*, No. 10-cv-2587, 2012 WL 2952251, at *3 (D. Minn. July 19, 2012); *Brown*, 2009 WL 3485833, at *1; *Magee v. Advance Am. Servicing of Ark., Inc.*, No. 6:08-cv-6105, 2009 WL 890991, at *4 (W.D. Ark. Apr. 1, 2009); *see also Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992) (permitting the consideration of attorney fees to determine diversity jurisdiction). At the outset of litigation, however, the precise amount of attorney fees to be incurred can almost never be divined.[2] As such, the need to consider attorney fees when evaluating whether jurisdictional amounts-in-controversy are met is a further demonstration of the fallacy of plaintiff's overall argument. If a defendant were required to prove the precise amount-in-controversy to a legal certainty, attorney fees would have to be excluded from almost every jurisdictional determination. But that is not the law in the Eighth Circuit, just as the preponderance of the evidence standard does not require a defendant to prove a plaintiff's damages to a legal certainty.

## IV.
## CONCLUSION

For the foregoing reasons, the potential value of plaintiff's damages, punitive damages, equitable relief, and attorney fees establishes this Court's jurisdiction by a preponderance of the

---

[2] The only situation where it might be possible for a defendant to estimate the value of attorney fees would be where plaintiff's counsel had provided a copy of a contingency agreement to the defendant—an unlikely circumstance that is not present here.

14

evidence because the Court "might legally conclude" that the amount-in-controversy exceeds $5 million. Plaintiff's motion to remand should be denied.

Dated: January 7, 2013                    Respectfully submitted,

                                                s/ *Dan H. Ball*
                                                Dan H. Ball, #27227MO
                                                Christopher J. Schmidt, #53362MO
                                                BRYAN CAVE LLP
                                                211 N. Broadway, Ste. 3600
                                                St. Louis, NO 63102
                                                Telephone:  (314) 259-2000
                                                Facsimile:   (314) 259-2020

                                                Stephen D. Brody (admitted *pro hac vice*)
                                                O'MELVENY & MYERS LLP
                                                1625 Eye Street, NW
                                                Washington, D.C.  20006-4001
                                                Telephone:    (202) 383-5300
                                                Facsimile:     (202) 383-5414

                                                *Attorneys for Defendants Johnson & Johnson and McNeil-PPC, Inc.*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this 7th day of January, 2013, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and served to counsel of record via the Court's electronic mail delivery.  The undersigned certifies that a true and accurate copy of this response has also been served via U.S. Mail on the following:

Richard S. Cornfeld
1010 Market Street, Suite 1065
St. Louis, MO 63101

                                                /s/ Christopher Schmidt_____