IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL RASKAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 12-2174 (JCH) |
| JOHNSON & JOHNSON; | ) ) ) |
| MCNEIL-PPC, INC.; | ) ) |
| Defendants. | ) ) |

## SUPPLEMENTAL AFFIDAVIT

I, Kirk Barton, on my oath hereby state and affirm as follows:

1. I am over eighteen (18) years of age and am in all respects competent to execute this Affidavit. The facts stated herein are true, known to me of my own personal knowledge, and if called as a witness, I could and would competently testify thereto.

2. I am the Senior Finance Director in the McNeil Consumer Healthcare Division at McNeil-PPC, Inc. McNeil Consumer Healthcare markets a broad range of over-the-counter medications, including Tylenol Multi-Symptom Cold solid medications.

3. As Senior Finance Director, I am responsible for financial reporting compliance, budgeting, financial planning, and financial decision support at McNeil Consumer Healthcare.

4. I am familiar with data sources available for sales of McNeil Consumer Healthcare's products at the state level, and I previously executed an Affidavit, dated November 20, 2012, summarizing data for sales of Tylenol solid cold medications to direct purchasers in the State of Missouri.

EXHIBIT A

5.  As I indicated in my prior Affidavit, McNeil does not maintain data tracking product sales to consumers on the state level, but does maintain data on sales to direct purchasers, such as wholesalers, by location. The data McNeil maintains on sales to direct purchasers in the State of Missouri provides the best approximation of the total number of packages sold at retail in Missouri that is maintained by McNeil. McNeil also maintains data comparing retail prices for its products to the wholesale prices charged to direct purchasers. That data, when combined with data on total packages sold to direct purchasers, provides the best data maintained by McNeil for the total retail sales of its products on a state-by-state level.

6.  In my prior Affidavit, I reported that in the preceding five years, dating back to July 2007 (to capture packages that likely reached retail shelves 8-12 weeks later), a total of 593,104 packages of Tylenol solid cold medications treating multiple symptoms were shipped to McNeil's direct purchasers in the State of Missouri with an approximate retail cost of $3,469,310. I understand that the plaintiff has asserted that "the broad category of products for which Mr. Barton reported sales data . . . contains at least four separate products besides Tylenol Cold Multi-Symptom, the only one at issue here." His assertion is incorrect. The data reported in my prior Affidavit includes only the two products that appear to be described in plaintiff's Complaint: Tylenol Cold Multi-Symptom and Tylenol Cold Head Congestion, which is also a cold medication treating multiple symptoms.

7.  If data for sales of Tylenol Cold Head Congestion solid medications is eliminated and only Tylenol Cold Multi-Symptom solid medications are considered, there were 571,624 packages sold to direct purchasers in Missouri during the past five years with approximate retail cost of $3,336,977.

8.  I understand that the plaintiff has also asserted that McNeil's data on sales to

direct purchasers in the State of Missouri may include packages of Tylenol Cold Multi-Symptom solid medications that were purchased outside the consumer retail chain or re-sold outside the State of Missouri. In order to address these contentions, McNeil purchased retail-level sales data for Tylenol Cold Multi-Symptom cold medications from SymphonyIRI. SymphonyIRI provides information and analytics for consumer packaged goods, retail and healthcare companies and its data is frequently purchased by McNeil to support its business operations.

9. SymphonyIRI was able to provide actual data for all outlets in their database on the number of packages and the dollar amount of retail sales of Tylenol Cold Multi-Symptom solid medications sold in Missouri for the period January 2008 through the third quarter of 2012. For 2008 SymphonyIRI data did not include sales from Walmart nor Sam's club, based on data provided we projected total sales for 2008 to include Walmart and Sam's club. Based on this data our estimated total sales for the time period 2008- September 2012 are 554,440 packages sold in Missouri at a cost of $3,241,110. McNeil's sales to direct purchasers in Missouri for the same time period (January 2008-2012) were approximately 10% lower than the estimate derived from SymphonyIRI data: 499,858 packages sold with an approximate retail value of $2,895,497.

10. I swear under penalty of perjury under the laws of the state of Missouri that the foregoing is true and correct, and that this Affidavit was executed by me on the 4th day of January, 2013.

Further affiant sayeth not.

_____
Kirk Barton

STATE OF Pennsylvania

COUNTY OF Montgomery ) ss.

On this 7th day of January, 2013, before me personally appeared, Krik Barton, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal on the day and year last above written.

Notary Public
My Commission Expires:   *Susan C Fisher*
03/02/2013

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Susan C. Fisher, Notary Public
Whitemarsh Twp., Montgomery County
My Commission Expires March 2, 2013
Member, Pennsylvania Association of Notaries