UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL RASKAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12 CV 2174 JCH |
| | ) | |
| JOHNSON & JOHNSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| MARJIE LEVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12 CV 2266 HEA |
| | ) | |
| PFIZER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| LESLIE YOFFIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12 CV 2307 CDP |
| | ) | |
| BAYER HEALTHCARE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiffs filed these cases in Missouri state court, all raising similar allegations under the Missouri Merchandising Practices Act (MMPA). Defendants removed all three cases, asserting that this court has original jurisdiction under 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act (CAFA). Plaintiffs now seek remand of the cases to state court. Because I conclude that defendants have not met their burden of demonstrating this court's jurisdiction under CAFA, I will grant plaintiffs' motions to remand.

## **Background**

Plaintiff Daniel Raskas filed his case alleging that defendants Johnson & Johnson and McNeil-PPC, Inc. misled customers into throwing away unused Tylenol Cold Multi-Symptom solid medication after the stated expiration date on the package. He alleges that defendants' actions violated the MMPA because they have knowledge that the product actually remains safe and effective after the labeled expiration date. Raskas cites instances on Tylenol's website in which defendant states, "Using products beyond their expiration dates is not recommended," and "As long as your Tylenol products have not passed their expiration date, they are safe to use as directed." Plaintiff Raskas seeks to certify a class of "All Missouri citizens who purchased Tylenol Cold Multi-Symptom solid medication for personal, family, or household purposes and later discarded and

replaced it." This class, as well as the classes proposed by the other plaintiffs, would span a period of five years prior to the filing of the complaint, in accordance with the general five-year statute of limitations on Missouri claims created by statute. Mo. Rev. Stat. § 516.120.

Plaintiff Marjie Levy filed a similar claim against defendant Pfizer, Inc., raising similar allegations that defendant misled customers into discarding Advil after its stated expiration date. Levy cites a portion of the Advil website that states, "It is not recommended to use the product past its expiration date as the effectiveness of the ingredients is only assured until the date printed on the package." Pfizer also maintains a page on the Advil website called, "Medicine Cabinet Cleanout: Keep It Safe," urging consumers to discard unneeded, expired, or recalled products. Plaintiff Levy seeks to certify a class of "All Missouri citizens who purchased Advil for personal, family, or household purposes and later discarded and replaced it."

Plaintiff Leslie Yoffie filed her case against defendant Bayer Healthcare, LLC, alleging that this defendant also misled customers into discarding Bayer Aspirin after its stated expiration date. Yoffie quotes the following statement from the Bayer Aspirin website: "It is not recommended to use any OTC product beyond the labeled expiration date. Like all drugs, aspirin can deteriorate over

time and not be as effective once it is past expiration." Plaintiff Yoffie seeks to certify a class of "All Missouri citizens who purchased Bayer Aspirin for personal, family, or household purposes and later discarded and replaced it."

When these cases were filed in the Circuit Court for the City of St. Louis, each defendant removed the case against it to this court. The jurisdictional basis for removal was 28 U.S.C. § 1332(d), as amended by CAFA. Plaintiffs now seek to remand the cases to state court, on the ground that defendants have failed to meet their burden of establishing CAFA jurisdiction in this court.

## Discussion

28 U.S.C. § 1441(a) permits a defendant, under certain circumstances, to remove a civil action from a state court to a federal district court on the basis of diversity of citizenship. It provides as follows:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). A defendant seeking to "invoke federal jurisdiction through removal . . . bears the burden of proving that the jurisdictional threshold is satisfied." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Removal statutes are strictly construed, and any doubts about the propriety of removal are

resolved in favor of state court jurisdiction and remand.  *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007).

The court's jurisdiction in the instant case is premised on CAFA, which confers federal court jurisdiction when the following three elements are satisfied: (1) minimal diversity; (2) a proposed class containing at least 100 members; and (3) an amount in controversy that is at least $5 million in the aggregate.  28 U.S.C. § 1332(d); *Plubell v. Merck & Co.*, 434 F.3d 1070, 1071 (8th Cir. 2006).  As with other removal cases, "a party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence."  *Bell*, 557 F.3d at 958. As the Supreme Court stated last week, my task here is to determine whether the amount in controversy is met "by adding up the value of the claim of each person who falls within the definition of [plaintiffs'] proposed class and determine whether the resulting sum exceeds $5 million."  *Standard Fire Ins. Co. v. Knowles*, No. 11-1450, 2013 WL 1104735, at *3 (U.S. Mar. 19, 2013).   This jurisdictional issue "is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are . . . ."  *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).  "Once the removing party has established by a preponderance of the evidence that the jurisdictional amount is satisfied, remand is only

appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Bell*, 557 F.3d at 956.

In these cases, the plaintiffs concede that there is minimal diversity. Although they do not concede that there are at least 100 members in the proposed class, their briefs do not touch on this topic, and they do not appear to seriously dispute this requirement. Rather, the issue of federal jurisdiction in these cases centers on the amount in controversy.

Defendants, as the parties bearing the burden of proving the amount in controversy by a preponderance of the evidence, provide various types of sales evidence in an attempt to establish the potential value of the medication that is in controversy in this case. Specifically, defendants Johnson & Johnson and McNeil-PPC, Inc. provided affidavits[1] demonstrating that over the past five years, sales of Tylenol Cold Multi-Symptom solid medications to direct purchasers in Missouri included 571,624 packages at a retail cost of $3,336,977.[2] Defendant

---

[1] Plaintiffs argue that I should not consider the affidavits presented by defendants in these cases because they constitute inadmissible hearsay evidence. Without determining the admissibility of these affidavits, I will consider them in my analysis. Because I conclude that defendants have not met their burden even when considering these affidavits, this issue does not affect my rulings in this order.

[2] Defendant's original affidavit from Kirk Barton, a Senior Finance Director for McNeil-PPC, Inc., showed higher sales figures because it included sales of both Tylenol Cold Multi-Symptom and Tylenol Cold Head Congestion. Because I find that plaintiff's complaint only raises allegations concerning Tylenol Cold Multi-Symptom, the revised figure is more appropriate for

Pfizer, Inc. provided affidavits showing that total retail sales of Advil in Missouri from January 2009 through October 2012 totaled $14,357,285; total sales to wholesalers and distribution centers in Missouri from November 2007 through October 2012 totaled $12,093,085; and retail sales to Missouri customers at Wal-Mart alone from November 2007 through October 2012 totaled $6,408,795.[3] Finally, defendant Bayer Healthcare submitted an affidavit showing retail sales in Missouri of all Bayer Aspirin products from November 2007 to the present totaled approximately $19,800,000.[4]  All defendants also argue that this court may consider potential punitive damages, injunctive relief, and attorneys' fees in calculating the amount in controversy.

In response to these sales figures, plaintiffs argue that the retail value of the medications is not an appropriate measurement of the amount in controversy. Plaintiffs allege that the only purchases that are at issue are those made by

---

this analysis.

[3] These affidavits were made by Zack Apkarian, a Senior Director of Global Analytics and Business Insights at Pfizer, and Richard Rezek, a Director of Sales Strategy at Pfizer.  The original affidavits included sales figures for "base Advil," which defendant defines as including regular Advil, Advil Liqui-Gels, and Advil Migraine.  However, as the only product at issue in plaintiff's complaint is regular Advil, the supplemental affidavits submitted by Pfizer are more appropriate.

[4] This affidavit was made by Richard Kloenne, a Senior Manager of Market Research for Bayer. This affidavit included sales figures for all Bayer Aspirin products, and no additional affidavit was submitted in response to plaintiff Yoffie's allegations that her complaint relates only to

consumers who later discarded and replaced the medication after the expiration date, not all purchases made in the state of Missouri.  Further, plaintiffs allege that only the value of the medication discarded is part of the damages claim, not the entire value of the medication purchased.  However, plaintiffs did concede at the hearing that they are unaware of a proper mechanism for calculating potential compensatory damages at this stage of the case.

As stated above, it is the defendants' burden – as the removing parties – to establish that the amount in controversy in each case exceeds $5 million by a preponderance of the evidence.  Defendants have provided extensive data of sales of their respective products in question to citizens of Missouri.  However, defendants do not propose a logical formula for calculating the potential damages in this case using only the total sales data provided.  In fact, none of the defendants presents such a formula or methodology for calculating the potential damages, but rather asks the court to presume that the amount in controversy must satisfy the jurisdictional threshold based on the high sales figures alone.  This type of speculation is not sufficient to satisfy the jurisdictional burden on defendants.  As explained in *Ongstad v. Piper Jaffray & Co.*, 407 F. Supp. 2d 1085, 1092 (D.N.D. 2006), "[n]either party has provided the Court with a reliable method to determine,

---

"Genuine Bayer Aspirin."

or even guesstimate," the value of the medication in controversy in these cases. Therefore, I agree with other courts that have considered this issue that because the amount of damages is indeterminable at this stage of the proceedings, defendants have not met their burden of establishing subject matter jurisdiction over this case. *See, e.g.*, *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 52-53 (1st Cir. 2009); *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 276 (2d Cir. 2006); *Thompson v. Apple, Inc.*, No. 3:11CV3009, 2011 WL 2671312, at *2 (W.D. Ark. July 8, 2011); *Ongstad*, 407 F. Supp. 2d at 1092.

As to defendants Johnson & Johnson and McNeil-PPC, Inc. specifically, their affidavits show sales of Tylenol Cold Multi-Symptom totaling around $3.3 million. Although they argue, and I agree, that I may consider punitive damages, injunctive relief, and attorneys' fees in determining the total amount in controversy, I conclude that they still failed to meet their burden. Because the defendants have not provided a reliable figure for actual damages, I cannot place any reasonable value on the remaining types of damages without merely guessing. Thus, defendants Johnson & Johnson and McNeil-PPC, Inc. failed to meet their burden of establishing CAFA jurisdiction.

Defendant Bayer also provided insufficient sales data to meet its burden. Bayer provided sales data for the entire line of Bayer Aspirin products, although I

believe the complaint and arguments presented by the plaintiff make it clear that the only drug at issue is Genuine Bayer Aspirin. Thus, in addition to the fact that defendant Bayer does not provide an appropriate methodology for determining damages from the sales figures it provided, Bayer's sales figures are generally unhelpful in showing the amount in controversy because they include products not at issue here.

Defendant Pfizer admittedly comes the closest to reaching the jurisdictional threshold, as its sales figures to Missouri residents are substantially higher than those provided by the other two defendants. But damages here must be based on the amount of product discarded and replaced. To extrapolate a damages figure from these high sales numbers – on that basis alone – would be an exercise in speculation. *See, e.g.*, *Ongstad*, 407 F. Supp. 2d at 1092. Therefore, Pfizer also failed to meet its burden in establishing CAFA jurisdiction over its case.

Defendants rely heavily on the Ninth Circuit's opinion in *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (2010). In that case, the plaintiff sought to certify a class and raised claims alleging that she was charged for services that she never ordered. *Id.* at 397. To support removal, defendant submitted an affidavit showing that the total billings for the services in question exceeded $5 million. *Id.* at 397. Plaintiff contended that the figures provided by defendant were not

sufficient for removal because they included all charges for the services in question, whether they were authorized or unauthorized. *Id.* at 398. The court concluded that it had jurisdiction on the basis of defendant's evidence because "[t]he Plaintiff is seeking recovery from a pot that Defendant has shown could exceed $5 million and the Plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less. The amount in controversy on this record therefore comprises the total billings . . . ." *Id.* at 401.

The *Lewis* case is distinguishable from the facts in these cases. Here, plaintiffs have explicitly stated that their damages are lower than the total amount of retail sales for the medication. Rather, they only seek damages for the value of the medication that was actually thrown away. Even though the complaints allege that the plaintiffs incurred costs to replace the medication, they only seek the value for replacing the portion that was actually discarded – not the entire package of medication. Therefore, as plaintiff has explicitly stated that its damages are less than the amounts proffered by defendants, the Ninth Circuit's holding is not persuasive in these cases.

Accordingly, I conclude that remand is appropriate in all three cases, as the defendants have failed to meet their burden of establishing the requisite amount in

controversy to support CAFA jurisdiction. Separate orders in accordance with this opinion will be issued in each case.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of March, 2013.